STATE AND DISTRICT OF MONTANA, GREAT FALLS DIVISION
GREAT FALLS, MONTANA

IN THE MATTER OF:
JOHN WILLIAM LIEBA II
DOB: XX/XX/1995

Case No. MJ-17- || -GF-JTJ

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, David P. Burns, being first duly sworn, hereby depose and state as follows:

### A. Introduction and Agent Background

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) assigned to the Salt Lake City Field Office, Glasgow, Montana Resident Agency office in Glasgow, Montana. I have been employed by the FBI as a Special Agent for 22 years. I have experience investigating all federal crimes under the jurisdiction of the FBI, including kidnappings and crimes against children.

2. I make this affidavit in support of an application for a search warrant to obtain health records of John William Lieba, II, which is further described in Attachment A.

3. The facts set forth in this affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers;

1

interviews of witnesses; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4. This affidavit is made in support of an application for a search warrant to search for and seize evidence of violations of Kidnapping, in violation of 18 U.S.C. §§ 1153(a) and 1201, Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. §§ 1153(a) and 2241(c), and Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 1153(a), 113(a)(6), and 3559(f)(3).

5. The subject of the search and seizure applied for in this affidavit are the health records relating to the services that Lieba has received from Indian Health Service, 550 6th Avenue North, Wolf Point, Montana 59201. The purpose for obtaining the contents is to obtain evidence for the criminal violations listed in paragraph 4, including proof of Indian status under the Major Crimes Act.

## B. Statement of Probable Cause

6. The following information is based on my investigation.

7. At 9:04 p.m., on February 26, 2016, Valerie Whitehawk dialed 911 and reported that her four-year-old granddaughter, M.L., had been missing for two hours and children at the playground said that Lieba took M.L. against M.L.'s will.

Fort Peck Tribal Criminal Investigators (CI) requested the assistance of the Federal Bureau of Investigation (FBI). A coordinated search for M.L. and Lieba was initiated involving multiple agencies.

8. Juvenile witness #1 (G.N.) told Tribal Officer Christopher Grey Bear that he saw Lieba at the playground earlier on February 26, 2016. G.N. said that on the evening of February 26, 2016, G.N. saw Lieba grab M.L., pick her up, and run down the street in the vicinity of West Ash St., Wolf Point, Montana. Juvenile witness #2 (J.G.) told Tribal Forensic Interviewer Angela Matthews that she was playing with M.L. on West Ash St., Wolf Point, Montana, when Lieba picked up M.L. and ran away.

9. Pursuant to the coordinated search that lasted through the night and into the morning of February 27, 2016, law enforcement recovered the shoes of M.L. next to railroad tracks, which was less than a half mile from where M.L. was last seen.

10. On February 27, 2016, at approximately 11:40 a.m., Lieba was located and arrested while traveling as a passenger in a vehicle in Wolf Point, Montana. Lieba was transported to the Roosevelt County Jail.

11. On February 27, 2016, at approximately 11:57 a.m., FBI Special Agents (SA) David Burns and Craig Overby interviewed Lieba. Tribal Criminal Investigator (CI) Kenny Trottier joined later in the interview. Lieba initially stated he would voluntarily provide biological samples to the investigators. When asked

to sign the biological sample consent form, Lieba answered, "Not yet." He answered the same when asked if he would consent to photos being taken of him. When asked if he was depressed, Lieba said he was not sure about his mental state. When asked if he was distraught, he said he did not know and he just felt like he did not care. Lieba had been prescribed medication, but he stopped taking it. When asked what the source of his pressure or stress was, Lieba said he had not been in an intimate relationship with a woman lately. Lieba claimed to have no memory from when he began drinking Friday night, which was February 26, 2016, until he was arrested on Saturday, which was February 27, 2016. Lieba said he was suicidal and did not care about anything. When asked what was holding him back from providing further information, Lieba said he was thinking about the girls with whom he had recently become acquainted. Lieba said his romantic opportunities with those girls were now "out the window." Lieba claimed to have no idea where M.L. was at the time of the interview or what happened to her. Lieba then stated he did not want to talk any further. Lieba was advised that swabs would be used to take biological samples from his hands and penis immediately, as well as photographs would be taken due to exigent circumstances. The interviewers had to stop Lieba from attempting to clean his hands by wiping his hands through the hair on his head. Lieba was asked if M.L. was dead and he responded, "Probably." Lieba was asked if he denied taking M.L. He responded, "I'd rather avoid that question." Lieba was asked why his penis appeared to be red

4

on the tip. Lieba said lately he had been wetting the bed. He said he had also been having wet dreams. Lieba was transported to the Poplar Adult Detention Center.

12. On February 28, 2016, at approximately 10:30 a.m., Lieba told a jailer he wanted to talk with "the Feds." SA Burns and CI Trottier contacted Lieba at the Poplar Adult Detention Center. Lieba stated he wanted to "exclude most of what happened the other day. I'll just give you the location." Lieba then provided only the general location of where M.L. would be found. Lieba said the location was the CHS buildings next to Andy Giles' house. Lieba refused to be specific regarding M.L.'s exact location. Lieba was asked if the interviewers should continue to talk with him or go assist in locating the body. Lieba replied, "Probably go get the body." Lieba immediately asked if the recorder was still recording. When he realized the recorder was still on, Lieba became visibly stressed and a tear ran down his cheek. Lieba stated that M.L. was not dismembered and that she was most likely still alive, but he doubted it. Lieba stated M.L. was not tied up. Lieba was asked if he stabbed M.L., and he responded, "No." Lieba was asked if he choked her, and he stated he didn't want to answer that question. Lieba was asked if M.L. was clothed, and he replied, "Yah." Lieba was asked how he abducted M.L., and he claimed he didn't remember. Lieba was asked if anyone helped him, and he stated, "No." SA Burns drew a diagram of the location of M.L. with the guidance of Lieba.

13. M.L. was found alive inside an abandoned pickup truck on the backside of the Ag Land Partners business, just west of the CHS grain elevators. M.L. was immediately taken for medical treatment. This was the general location where Lieba identified that investigators would find M.L.

14. After being stabilized, M.L. was transported to the Billings Clinic, in Billings, Montana. M.L. was examined by Dr. Cynthia K. Brewer, who reported the following:

a. Petechiae was present on M.L. that was consistent with strangulation.

b. The injuries to M.L.'s genitalia were consistent with blunt force penetration through the labia, through the hymen, and into her vagina.

c. The injuries on M.L.'s anus were consistent with either anal penetration or severe constipation.

Additionally, while at the hospital M.L. underwent a sexual assault examination in order to collect evidence that was submitted to the FBI Crime Lab for analysis.

15. Dr. Brewer conducted a follow-up examination of M.L. on March 15, 2016. Dr. Brewer took photographs during the examination. Dr. Brewer found M.L. was suffering from an outbreak of herpes far into her anus, all over her genital area and to the vulva. The herpes outbreak along with the anal injuries Dr. Brewer observed during her first examination of M.L., led Dr. Brewer to believe anal penetration occurred during a sexual assault. Due to the herpes infection, M.L. will suffer from herpes outbreaks for the rest of her life. Dr. Brewer was advised investigators observed red inflammation on the subject's penis at the time

of his arrest. Dr. Brewer advised the investigators' observations are symptomatic of a herpes outbreak on the subject's penis.

16. On February 27, 2016, Lieba told FBI Special Agent David Burns during an interview, as previously described in paragraph 11, that he had been prescribed medication. Lieba said he had previously taken prescribed medication, but had stopped.

17. On February 28, 2016, Misty Schindler, Lieba's grandmother, identified a white paper bag in her residence as a prescription medicine bag that Lieba had previously obtained from Indian Health Service.

18. On February 28, 2017, Willow Grand Champ, Indian Health Service, 550 6th Avenue North, Wolf Point, Montana 59201, requested that Lieba's chart number be used for requests for records. Grand Champ then advised that Lieba's chart number was 27185. Such records establish that Lieba received benefits based on his Indian status, which is evidence that will aid in proving Indian status under the Major Crimes Act.

19. M.L. is four years old, and all of the above-described events occurred on the Fort Peck Indian Reservation. Lieba is an enrolled member of the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, which is a federally recognized Tribe. Lieba is older than eighteen years of age, and he is not a parent, grandparent, brother, sister, aunt, uncle, or an individual with legal custody of M.L.

7

## C. Conclusion

20. Based on my training and experience, and the facts as set forth in this affidavit, I have probable cause to believe that evidence of violations of the above-described criminal statutes exists in the medical records of John William Lieba, II, which includes proof of Indian status. These documents are located within the District of Montana. Accordingly, a search warrant is requested.

Respectfully submitted,

David P. Burns
Special Agent
Federal Bureau of Investigation
U.S. Department of Justice

SUBSCRIBED and SWORN to before me this 14th day of March, 2017.

HON. JOHN JOHNSTON
United States Magistrate Judge